768 A.2d 291

CITY OF PHILADELPHIA, Appellant,

v.

FRATERNAL ORDER OF POLICE, LODGE NO. 5, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 16, 2000.

Decided March 22, 2001.

Stephanie L. Franklin–Suber, Stephen E. Atkins, Anne Barden, Mark J. Foley and Andrew J. Rolfes, Philadelphia, for City of Philadelphia.

Thomas H. Kohn, Philadelphia, Thomas W. Jennings and Richard C. McNeill, Philadelphia, for Fraternal Order of Police Lodge #5.

Before FLAHERTY C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice.

We granted allocatur in this matter in order to consider whether the award entered by the arbitrator below was proper. For the reasons that follow, we now affirm in part and reverse in part the order of the Commonwealth Court.

In 1953, the City of Philadelphia ("City") created the position of Staff Inspector on the Philadelphia police force. The class specification for this rank, as last revised in 1968, stated that Staff Inspectors conducted special and confidential investigations into complaints against police officers. Pursuant to the collective bargaining agreement ("CBA") between the City and the police officers, the pay for Staff Inspectors was more than that for Captain but less than that for Inspector.

In the early 1980s, the City decided not to schedule any more examinations for the Staff Inspector position; it conducted the last examination for this position in 1982. Because of attrition, the number of Staff Inspectors began to dwindle. In 1987, to correct for the short staffing, the City assigned several Captains to perform work that had previously been performed by Staff Inspectors.

On June 29, 1992, an attorney for the Fraternal Order of Police Lodge No. 5 ("FOP") filed the demand for arbitration

at issue in this matter. The FOP stated the nature of the dispute was that "[p]resently the Bargaining Unit contains two Staff Inspectors. This number represents a significant reduction in the number of Staff Inspectors over the past few years without the scheduling of the appropriate promotional examination." Demand for Arbitration, dated 6/29/1992. The FOP requested as its relief "[t]hat a promotional examination be scheduled immediately for Staff Inspectors. Make whole." *Id.*

The matter proceeded to arbitration. On the first day of arbitration, the FOP requested that the arbitrator also consider the issue of whether employees who were ranked lower than Staff Inspectors should be granted out-of-class pay for their performance of Staff Inspector functions. Arbitrator's decision dated 6/09/1998 at 25. The City objected, arguing that the arbitrator could not consider this issue as it had not been raised prior to the first day of hearings.

The arbitrator rejected the City's argument. She reasoned that as "[t]he out-of-class pay claim cannot be said, with positive assurance, to fall outside of the scope of the allegation alleged" in the demand for arbitration, then she could consider the claim. *Id.* at 22. Yet, she opined that equitable considerations should limit the out-of-class pay award. She stated that since the FOP did not provide adequate notice of this claim until the first day of the hearings, then the City should be compelled to make out-of-class pay awards only from that date. *Id.* at 27. She therefore ordered that the City pay to those lower-ranking employees who had been performing Staff Inspector functions the difference between the salary they had been receiving and that of the first step of the job class of Staff Inspector from October 8, 1997 up through the date of the arbitrator's decision. *Id.* Furthermore, with respect to job assignments which would take place after the date of the arbitrator's decision, the arbitrator ordered the City to either assign Staff Inspector functions to Staff Inspectors or to pay the applicable Staff Inspector pay rate to lower ranked individuals who were performing Staff Inspector functions. *Id.*

Next, the arbitrator determined that the propriety of the City's *de facto* elimination of the rank of Staff Inspector was a mandatory subject of bargaining as it bears a rational relationship to police duties. *Id.* She rejected the City's argument that the general management rights clause contained in the CBA, which reserved to the City the right to make certain decisions regarding inherent managerial policy, rendered the City's decision to eliminate a rank completely nonnegotiable. The arbitrator reasoned that the complete elimination of this rank would have an impact on the wage scale and job duties of the members of the bargaining unit, and thus was a negotiable matter as it related to the terms and conditions of employment. *Id.* at 27–29. The arbitrator therefore ordered that the City must bargain, upon the request of the FOP, over the decision to eliminate the rank of Staff Inspector.

The City then petitioned the Court of Common Pleas of Philadelphia County to vacate the award. The Court of Common Pleas denied the City relief and the Commonwealth Court affirmed.

The City filed a petition for allowance with this court. We granted allowance of appeal in order to determine whether the arbitrator below acted improperly in entering the award.

Act 111 [1] and related case law circumscribe our review of the instant arbitration award. The historical underpinnings of Act 111, an act which applies to police and firefighting personnel only, are recounted at length in *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa.66, 656 A.2d 83 (1995). In brief, the legislature crafted Act 111 in the wake of a disturbing series of episodes of labor unrest within the police and firefighting forces. This unrest was attributed to the fact that police and firefighting personnel operated under a dual disadvantage: they were prohibited from striking and were denied the right to collectively bargain. *Betancourt,* 656 A.2d at 88–89.

Act 111 altered the landscape of employer-employee relations. While the legislature maintained the prohibition on

1. Act of June 24, 1968, P.L. 237, as amended, 43 P.S. §§ 217.1–217.10.

striking by police and fire personnel, 43 P.S. § 217.5, it granted to the workers the right to collectively bargain as well as the right to an arbitration of their disputes. These arbitration provisions were one of the key aspects of the legislature's plan to ensure stability within the police and firefighting forces. The legislature designed Act 111 arbitration to be swift and final; it allowed judicial intervention in the Act 111 context in only the rarest of circumstances. *Betancourt*, 656 A.2d at 89. The legislature feared that if resolution were to be forestalled by years of litigation, the illegal strikes that had rocked police and firefighting forces across the Commonwealth in the 1960s could very well reoccur.

■ Our review therefore is a very constricted one and is in the nature of narrow certiorari. Narrow certiorari allows us to inquire into only four aspects of an Act 111 arbitrator's award: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; or (4) deprivation of constitutional rights. *Betancourt*, 656 A.2d at 85.

The City's first argument is that the arbitrator lacked jurisdiction to grant the out-of-class pay award. The City contends that the FOP did not properly present an out-of-class pay claim in its the demand for arbitration and thus the arbitrator could not consider it. The City asserts that both the CBA and case law from the Commonwealth Court dictate that the arbitrator had no jurisdiction over this tardily raised issue.

In addressing this claim, the Commonwealth Court determined that the out-of-class pay award was not in fact a new issue but rather had been encompassed within the original demand for arbitration. The court stated that "the FOP's 1992 demand, stating that Staff Inspector positions had been permitted to dwindle, necessarily implied that some officers were performing Staff Inspector duties but not receiving Staff Inspector pay. The demand to 'Make whole' in the claim for relief sought encompasses a request for compensation for such individuals." *City of Philadelphia v. Fraternal Order of*

*Police Lodge No. 5,* 728 A.2d 1043, 1047 (Pa.Cmwlth.Ct.1999). The lower court therefore concluded the arbitrator had jurisdiction over this claim.

There are two steps in our analysis of this issue. First, we must determine whether the Commonwealth Court properly determined that the out-of-class pay claim, although not squarely presented in the demand for arbitration, was nonetheless raised by implication. If we agree with the Commonwealth Court on this point, then we must necessarily conclude that the arbitrator had jurisdiction over this issue. If, on the other hand, we find that the Commonwealth Court erred in rendering this determination, then we must determine whether the arbitrator would nonetheless have jurisdiction over an issue which was raised on the first day of hearings.

In concluding that the arbitrator had jurisdiction to issue an out-of-class pay award, the Commonwealth Court implicitly relied on a doctrine which was most recently articulated in *Annenberg v. Commonwealth,* 562 Pa. 581, 757 A.2d 338, 348 (2000). This doctrine applies in matters where the complaining party tenders a general prayer for relief, such as the FOP's request in the matter *sub judice.* In these matters, a tribunal examines the complaining party's statement of the harm which allegedly occurred. The tribunal may then award "any appropriate relief that conforms to the case made by the pleadings although it is not exactly the relief which has been asked for by the special prayer." *Id.*

This doctrine obviously places a broad power in the hands of the tribunal presented with a general prayer for relief. But a recognition of such broad power is not tantamount to a granting of carte blanche to the tribunal to render any award. Rather, such an award must, at bottom, redress the harm alleged to have occurred. In the matter presently before the court, we must therefore focus on the nature of the complaint as crafted by the FOP's attorney. If the FOP's statement of the dispute could be viewed as implying that officers were underpaid while performing Staff Inspector work, then we may conclude that an out-of-class pay claim was encompassed within the demand for arbitration. If, however, no such

implication can be drawn, then an out-of-class pay claim was not properly presented in the demand for arbitration.[2]

■ We find that the out-of-class pay claim was not presented in the demand for arbitration. In the matter *sub judice*, the FOP's specific statement of the nature of the dispute was that the number of Staff Inspectors had dwindled over the years as the City had not scheduled the appropriate promotional examination. The FOP made no allegation that other, lower-ranked officers were performing Staff Inspector functions. To extrapolate from the FOP's statement of the nature of the dispute, which focused on the diminution in the number of Staff Inspectors, the allegation that other officers were performing Staff Inspector work, that they were ranked lower than Staff Inspectors, and that they were underpaid for such work is simply too great a leap of logic.

■ Therefore, in the context of the FOP's demand for arbitration, the arbitrator could consider a number of different remedies to rectify the diminution in the number of Staff Inspectors. Yet an out-of-class pay award does nothing to increase the numbers of Staff Inspectors. Rather, it is a remedy to compensate those officers who were allegedly underpaid for performing work normally assigned to Staff Inspectors. The issue of whether certain officers had been underpaid for work performed, and what their remedy should be, is clearly one which is distinct from whether the City acted improperly when it unilaterally decided to let attrition reduce the number of Staff Inspectors. We therefore find that the out-of-class pay claim was not properly encompassed within the demand for arbitration.[3]

**2.** We note that this rationale should not be read to suggest that a demand for arbitration must be crafted with the exacting specificity of a complaint. But the flexibility accorded in the arbitration arena is not limitless. An award for relief may not be wholly divorced from the demand for arbitration's statement of the dispute.

**3.** We also reject the notion that the City was somehow "on notice" that the out-of-class pay claim was at issue in this matter simply because the FOP had specifically raised such a claim in earlier demands for arbitration which were separate from and unconsolidated with the instant matter. *See* R.R. at 458a–468a (the FOP's grievance argued that a

█ Now that we have determined that the out-of-class pay issue was not encompassed within the FOP's demand for arbitration, we must decide whether the arbitrator had jurisdiction to consider this issue. The City contends that the arbitrator did not have jurisdiction to resolve this issue as the FOP attorney did not raise it in the demand for arbitration and it could not be raised on the first day of arbitration. In support of this argument, it relies heavily on that portion of the CBA which states that arbitrations are to be conducted pursuant to the Rules for Voluntary Labor Arbitration of the American Arbitration Association ("AAA Rules"). CBA, dated 7/21/1986, at 26. The AAA Rules, in turn, specifically state that "[a]fter the arbitrator is appointed, no new or different claim may be submitted except with the consent of the arbitrator and all parties." AAA Rules, Rule 7.[4]

We agree with the City that the arbitrator did not have the jurisdiction to add a new issue on the first day of the arbitration hearings where the City protested the addition of such issue. The parties had agreed, via the CBA, that the arbitrator's jurisdiction was limited by the AAA Rules. Those AAA Rules quite clearly forbid the injection of a new issue on the first day of the arbitration hearings absent consent of all

lieutenant performing Staff Inspector work was entitled to out-of-class pay); R.R. at 469a–476a (the FOP's grievance was that a sergeant who had been assigned to perform Staff Inspector work was entitled to out of class pay). The fact that the FOP made an out-of-class pay claim in similar, yet undeniably distinct, matters does not give rise to the presumption that this issue is for all times present in any other similar matter. It would be illogical to conclude that the City was somehow on notice not only as to those claims actually raised in the demand for arbitration, but also as to any other claims that the FOP has raised in the past.

4.  The City also cites to a line of Commonwealth Court cases which state that an arbitrator may not consider issues which were not included in the demand for arbitration. In particular, the City relies on *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 717 A.2d 609 (Pa.Cmwlth.Ct.1998) and *Marple Township v. Delaware Cty. F.O.P. Lodge 27*, 660 A.2d 211 (Pa.Cmwlth.Ct.1995). In both of these matters, the Commonwealth Court determined that arbitrators exceeded their jurisdiction when they considered issues which were not properly presented in the demand for arbitration. While these decisions lend persuasive support for the City's position, we see no need to analyze them as the CBA between these particular parties resolves the issue.

parties. Were we to allow this award to stand, where the CBA clearly dictates that the arbitrator had no jurisdiction to speak on this issue, we would be doing little more than investing Act 111 arbitrators with limitless powers. Accordingly, we find that the arbitrator was without jurisdiction to consider this issue.[5]

■ The City's next contention is that the arbitrator exceeded her authority in two different respects: first, when she ordered that in the future, the City must assign Staff Inspector functions to Staff Inspectors; and second, when she directed the City to bargain, upon request by the FOP, over the decision to eliminate the rank of Staff Inspector.[6] We have stated that "[o]ur definition of what constitutes 'an excess of an arbitrator's powers' [is] far from expansive." *Pennsylvania State Police v. Pennsylvania State Troopers Association,* 559 Pa. 586, 741 A.2d 1248, 1251 (1999). Essentially, if the acts the arbitrator mandates the employer to perform are legal and relate to the terms and conditions of employment, then the arbitrator did not exceed her authority. *Id.* Act 111 has defined "terms and conditions of employment" as "including compensation, hours, working conditions, retirement, pensions and other benefits. . . ." 43 P.S. § 217.1. Finally, we have stressed that a mere error of law will not support a finding that the arbitrator exceeded her powers. *Pennsylvania State Police,* 741 A.2d at 1251.

The City claims that the decisions to assign work to certain employees or to eliminate a rank are within its managerial prerogative, and that the arbitrator acted in excess of her powers when she issued an award touching on this area. In

5. The City also argues that the arbitrator's consideration of the out-of-class pay issue was an excess of her powers and also created an irregularity in the proceedings, two other bases on which we can review this determination pursuant to *Betancourt.* Because we determine that the arbitrator was without jurisdiction to hear the out-of-class pay award, there is no reason for reviewing the City's remaining two arguments.

6. With regard to these aspects of the award, the City claims only that the arbitrator exceeded her powers. It does not claim that the arbitrator acted without jurisdiction, that there was an irregularity in the process, or that the award was unconstitutional.

support of this argument, the City relies heavily on the management rights clause of the CBA. This clause, which was added to the CBA via a 1993 interest arbitration award, states that

[m]atters of inherent managerial policy are reserved exclusively to the City.... [M]atters of inherent managerial policy include, but are not limited to, such areas of discretion or policy as ... the organizational structure of the Police Department, and the selection and direction of personnel.

R.R. at 262a. The City contends that pursuant to a decision by the Commonwealth Court as well as several final orders from the Pennsylvania Labor Relations Board ("PLRB"),[7] the arbitrator should have interpreted this management rights clause as precluding an arbitration award concerning the City's decision to eliminate the rank of Staff Inspector.

We do not find that the arbitrator exceeded her powers in rendering this portion of her order. First, the arbitrator's award did not mandate that the City carry out an illegal act. Second, these aspects of the award certainly concerned the terms and conditions of employment as they involved the type of work to be performed by certain classes of employees. In fact, the tenor of the City's argument is not that the award is unrelated to the terms and conditions of employment. Rather, the City is essentially contending that a proper interpretation of the management rights clause of the CBA and related case law should have led the arbitrator to the conclusion that the City has exclusive authority over these particular terms and conditions of employment. In short, the City argues that the arbitrator misinterpreted the management rights clause and misapplied decisional law. Such an argu-

7. Specifically, the City cites to *City of Philadelphia v. PLRB*, 138 Pa.Cmwlth. 113, 588 A.2d 67 (1991); *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia*, 29 P.P.E.R. ¶ 29142 (PLRB Final Order 1998); *Fraternal Order of Police Lodge # 5 v. City of Philadelphia*, 28 P.P.E.R. ¶ 28048 (PLRB Final Order 1997). In each of these three matters, the employer had effectively shifted employees from one department to another and the union protested. The adjudicatory tribunals in each of these matters determined that these decisions were exclusively within the prerogative of management and were not the subject of bargaining; they therefore denied relief to the union.

ment, though, is not cognizable within the confines of the narrow certiorari scope of review's definition of an excess of the arbitrator's powers as it is, in effect, an argument that the arbitrator erred as a matter of law. *See Pennsylvania State Police*, 741 A.2d at 1251. We therefore decline the City's invitation to disturb those portions of the arbitrator's award which ordered that the City must in the future assign Staff Inspector functions to Staff Inspectors and that the City must bargain, upon request by the FOP, over the decision to eliminate the rank of Staff Inspector.

We therefore reverse that part of the Commonwealth Court's order which upheld the arbitrator's granting of out-of-class pay to those lower ranked officers who had performed Staff Inspector work from October 8, 1997 to the date of the arbitrator's award as well as to the lower ranked officers who in the future perform Staff Inspector work. The remainder of the Commonwealth Court's order is affirmed.

Mr. Justice NIGRO files a concurring opinion.

Mr. Justice ZAPPALA files a concurring and dissenting opinion in which Mr. Justice CASTILLE joins.

NIGRO, Justice, Concurring.

I join the majority opinion, but write separately to reiterate my belief that the certiorari review as defined in *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa.66, 656 A.2d 83 (1995), is too narrow. As I stated in my concurring opinion in *Pennsylvania State Police v. Pennsylvania State Troopers Ass'n.*, 559 Pa. 586, 741 A.2d 1248, 1254–55 (1999), I would add a fifth area to the *Betancourt* scope of review: whether the arbitration decision is repugnant to public policy or shocks the conscience of the court. Since the arbitrator's decision in the instant case does not implicate this additional area of review, however, I agree with the disposition reached by the majority.

ZAPPALA, Justice, Concurring and Dissenting.

I wholly agree with the majority's conclusion that the out-of-class pay claim was not presented in the demand for arbitration and, accordingly, was outside the jurisdiction of the arbitrator. I write separately, however, to clarify my position regarding whether the arbitrator exceeded her authority in ordering the City to assign work to Staff Inspectors and in mandating that the City bargain over the decision to eliminate the rank of Staff Inspector. Under the specific facts of this case, I too would conclude, as the majority does, that the arbitrator did not exceed her authority in ordering "with respect to future job assignments," that the City "assign IAD Staff Inspector functions to Staff Inspectors...." Arbitrator's Opinion and Award at 30. I believe, however, that the Arbitrator did exceed her authority in ordering the City to "bargain, upon request by the Union, over the decision to eliminate the rank of Staff Inspector." *Id.*

Although an error of law alone will not warrant reversal under the narrow certiorari scope of review, an arbitrator's powers are limited. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa.66, 656 A.2d 83, 90 (1995). He or she may not mandate that an illegal act be carried out; he or she may only require a public employer to do that which the employer could do voluntarily. *Id.* Furthermore, the award must encompass only terms and conditions of employment and may not address issues outside of that realm. *Id.*, citing *Washington Arbitration*, 436 Pa. 168, 259 A.2d 437, 442 (1969).

In my view, the arbitrator's mandate that the City bargain with the FOP over elimination of the rank of Staff Inspector goes beyond issuing a decision concerning terms and conditions of employment.

The management rights clause contained in the CBA exclusively vests the City with the power to make inherent managerial policy and decisions. This clause states:

*Matters of inherent managerial policy are reserved exclusively to the City.* Except as specifically addressed in this

Award and the collective bargaining agreement, matters of inherent managerial policy include, but are not limited to, such areas of discretion or policy as civilianization of bargaining unit member positions, as addressed in the Award, the functions and programs of the City, standards of service, the overall budget and the *organizational structure of the Police Department*, and the selection and direction of personnel.

Collective Bargaining Agreement at 27, R. 262a (emphasis added).

Because the City's inherent managerial power was preserved in the CBA, including its power over the organizational structure of the Police Department, the FOP necessarily waived its right to bargain over the elimination of a particular ·rank. Thus, I believe the Arbitrator exceeded her authority in mandating that the City bargain with the FOP over the possible future elimination of this rank.

The arbitrator's decision regarding the City's obligation to assign future Staff Inspection work to Staff Inspectors (if that position were retained) clearly encompassed the terms and conditions of employment, since this would impact a particular employee's job duties. The decision to eliminate the rank of Staff Inspector, however, would have no such impact; especially in light of the fact that, if not eliminated, all future work would have to be assigned to Staff Inspectors. In my view, the elimination of the rank of Staff Inspector would be a pure managerial decision inherently and exclusively within the power of the City pursuant to the terms of the CBA. Thus, in my view, the arbitrator exceeded her authority in mandating the City to bargain with the union in this regard.

Mr. Justice CASTILLE joins this concurring and dissenting opinion.