# COMMONWEALTH of Pennsylvania (PENNSYLVANIA STATE POLICE), Petitioner

v.

# PENNSYLVANIA STATE TROOPERS ASSOCIATION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2006.

Decided Feb. 5, 2007.

Reargument Denied En Banc April 4, 2007.

---

Brian D. Pedrow and Samuel R. King, Philadelphia, for petitioner.

Gary M. Lightman, Harrisburg, for respondent.

BEFORE: COLINS, President Judge [1], and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

The Commonwealth of Pennsylvania (Pennsylvania State Police) petitions for review of the June 26, 2006 Act 111 [2] grievance arbitration award that sustained a grievance filed by the Pennsylvania State Troopers Association (the Association), concerning the Commonwealth's interpretation and implementation of what is referred to as "mandatory generic" features of the prescription program utilized by Association members. Specifically, the Act 111 grievance arbitration award at issue concluded that the Commonwealth's unilateral interpretation and application of the "mandatory generic" aspects of the prescription program violated the recent Act 111 interest arbitration award that served as the successor agreement to the parties' expired collective bargaining agreement.

On July 1, 2004, the collective bargaining agreement that existed between the Commonwealth and the Association expired, and the parties began working on a successor agreement through interest arbitration proceedings pursuant to the provisions of Act 111. In late December 2004, an interest arbitration award was adopted with provisions retroactive to July 1, 2004.

The dispute underlying the present matter relates to prescription co-pay and to language contained in the interest arbitration award that stated: "medical necessity

1. This case was assigned to the opinion writer prior to the date when President Judge Colins completed his tenure as president judge.

2. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 governs collective bargaining between public employers and their police and fire departments.

and mandatory generic features will be added to the program." During the interest arbitration proceedings, Matt Waneck, the Group Insurance Chief for the Commonwealth, who espoused coverage for state police under the Pennsylvania Employees' Benefit Trust Fund (PEBTF), testified as to the need to implement cost containment measures for the state police such as "mandatory generic features," that would work as follows: whenever a generic drug was available, an employee who opted instead for the brand name drug would pay both the brand co-pay (then $10 for the state police) and the cost difference between the brand drug and its generic counterpart.

Additionally, during the interest arbitration proceedings, the Association presented an expert in the administration of medical plans, William Einhorn, Esq., who identified four types of "mandatory generic" coverage: (1) soft method; (2) hard method; (3) voluntary method; and (4) dispense-as-written method.

At the conclusion of the interest arbitration hearings, the Association prevailed in not having its members included in the PEBTF, but the interest arbitration panel stated that "medical necessity and mandatory generic features" would be added to the program. This latter terminology was never defined or explained by the interest arbitration panel and therefore, the Association sought a determination from an Act 111 grievance arbitrator as to what "mandatory generic" features would mean to the Association members, as well as a determination as to whether the Commonwealth exceeded its authority and violated the interest arbitration award by unilaterally implementing its own version of a prescription co-pay plan.

The grievance arbitrator acknowledged the variations to "mandatory generic" features posited by the Association's expert witness as the soft method, the hard method, the voluntary method, or the dispense-as-written method. However, the grievance arbitrator concluded that there was no way to ascertain what the interest arbitrator meant by writing that "medical necessity and mandatory generic features will be added to the program," and no way to ascertain when such "mandatory generic" features would be implemented. Although the interest award provided that new prescription plan co-payments would be effective 120 days after issuance of the interest award, the latter did not stipulate that the "mandatory generic" features would be added at that point. The grievance arbitrator posits that the interest arbitration panel possibly intended that the mandatory generic features would be implemented after the parties negotiated a bilateral agreement as to which generic method to use.

The grievance arbitrator was further confronted with the Association's contention that when a medical determination is made that a member requires a brand name drug, the member should not be penalized by being required to pay both a co-payment and the cost difference between the brand name and the generic drug as described by the Commonwealth's insurance expert, Mr. Waneck. The grievance arbitrator properly notes that resolving this issue would require the arbitrator's adding to the contract, a practice expressly prohibited by the parties' collective bargaining agreement. As a result, the grievance arbitrator, on June 26, 2006, issued an award that required the parties to begin negotiations within 45 days of said award for the purpose of defining and clarifying the "mandatory generic" features of the prescription plan. The grievance award additionally restored the status quo ante by reimbursing Association members under the prior collective bargaining

agreement until a new prescription co-pay agreement was adopted.

This appeal by the Commonwealth from the June 26, 2006 grievance arbitration award followed.[3]

The Commonwealth contends that the June 26, 2006 grievance award should be vacated because the grievance arbitrator violated Act 111 by ordering the parties to bargain as to the meaning of the term, "mandatory generic" instead of interpreting it himself. By so doing, the Commonwealth contends that the grievance arbitrator vitiated the final, binding effect of the interest award, and relinquished his proper responsibilities by failing to make a timely and binding resolution of the grievance. The Commonwealth also maintains that the grievance arbitrator exceeded his authority under both the Act and the collective bargaining agreement by rescinding a provision of the interest award when his authority was only to interpret the award, not to add to or subtract from it.

The Association argues that it was well within the grievance arbitrator's authority to conclude that the Commonwealth had improperly and unilaterally defined a term left undefined by the interest arbitrator, and had thereby violated the contract. The Association also argues that while delegating resolution of an issue to the par-

ties may have been in excess of the grievance arbitrator's authority, neither party objected to that delegation.

Upon review, we conclude that the grievance arbitrator did not err in: (1) concluding that the Commonwealth's unilateral interpretation and application of the "mandatory generic" features of the prescription program contravened the provisions of the Act 111 interest arbitration award that was serving as a successor agreement to the expired collective bargaining agreement between the parties; (2) rescinding the current "mandatory generic" feature of the prescription plan, and directing the parties to begin negotiations within 45 days of the subject grievance arbitration award to reach an agreement as to what method would be used for the addition of "mandatory generic" features; and (3) restoring the status quo ante by reimbursing Association members pursuant to provisions of the former collective bargaining agreement until a new prescription co-pay agreement was implemented.

The Commonwealth presents inconsistent arguments because on one hand they aver that the grievance arbitrator erroneously abdicated his responsibilities by directing the parties to bargain to arrive at the meaning of the term, "mandatory ge-

---

3. In *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 564 Pa. 290, 768 A.2d 291 (2001), our Supreme Court reaffirmed an appellate court's limited review of an Act 111 arbitration award as follows:

> Act 111 altered the landscape of employer-employee relations. While the legislature maintained the prohibition on striking by police and fire personnel, 43 P.S. § 217.5, it granted to the workers the right to collectively bargain as well as the right to an arbitration of their disputes. These arbitration provisions were one of the key aspects of the legislature's plan to ensure stability within the police and firefighting forces. The legislature designed Act 111

arbitration to be swift and final; it allowed judicial intervention in the Act 111 context in only the rarest circumstances. [*Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995)]....

Our review therefore is a very constricted one and is in the nature of narrow certiorari. Narrow certiorari allows us to inquire into only four aspects of an Act 111 arbitrator's award: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; or (4) the deprivation of constitutional rights. *Betancourt*, 656 A.2d at 85.

*Id.* at 294–95, 768 A.2d at 294.

neric" feature, instead of interpreting it himself, while at the same time, the Commonwealth contends that the grievance arbitrator exceeded his authority by rescinding from the interest arbitration award the undefined term, "mandatory generic" feature. In examining the grievance arbitrator's award, we conclude that he neither improperly abandoned his responsibilities nor improperly exceeded his authority. In *Pennsylvania State Police v. Pennsylvania State Troopers Association,* 902 A.2d 599, 602–3 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 590 Pa. 680, 912 A.2d 1294 (2006), this Court unequivocally stated:

> In light of the Supreme Court's decision, we must continue to review arbitration awards under act 111 by considering only questions concerning the arbitrator's jurisdiction; the regularity of the proceedings; an excess of the arbitrator's powers; and the deprivation of constitutional rights. *Id. Betancourt.* "For a grievance arbitrator to exceed his or her authority, the arbitrator would have to either mandate an illegal act or grant an award that addresses issues beyond the scope of the [CBA] or that extends beyond the terms and conditions of the employment." *Twp. Of Ridley v. Fraternal Order of Police Lodge No. 27,* 718 A.2d 872, 874 (Pa.Cmwlth.1998). Given our limited review, we may not question the reasonableness of an arbitrator's interpretation of the CBA. *Id.*

Applying the foregoing rationale to the present matter, we note that the only argument advanced by the Commonwealth within the narrow certiorari scope of our review is the Commonwealth's contention that the grievance arbitrator exceeded his authority by removing the phrase, "mandatory generic" feature, left undefined by the interest arbitrator, until the parties, through the bargaining process, arrived at a mutual definition of the phrase. In this context, the grievance arbitrator did not exceed his authority by finding that the phrase, "mandatory generic feature," was never defined by the interest arbitration award, and that since it was a key element in the prescription plan of the bargaining parties, it had to be addressed by them. Therefore, the grievance arbitrator's decision, directing the parties to engage in bargaining sessions for the purpose of reaching an acceptable definition of the phrase, "mandatory generic feature," was clearly reasonable and not expansive beyond the terms and conditions of the parties' employment benefits. Finally, the grievance arbitrator's award in this matter does not require the Commonwealth to perform an illegal act of any type.

Accordingly, based upon the above discussion, the June 26, 2006 order of the grievance arbitrator is affirmed.

### ORDER

AND NOW, this 5th day of February 2007, the order of the grievance arbitrator in the above-captioned matter is **AFFIRMED.**