**PENNSYLVANIA STATE POLICE, Petitioner**

v.

**PENNSYLVANIA STATE TROOPERS' ASSOCIATION (Trooper Christopher J. Winesburg), Respondents**

Commonwealth Court of Pennsylvania.

Argued March 15, 2010.
Decided April 13, 2010.

Keli M. Neary, Asst. Counsel, Harrisburg, for petitioner.

Sean T. Welby, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

The Pennsylvania State Police (PSP) petitions for review of that part of the August 19, 2009, Act 111[1] grievance arbitration award that sustained the grievance filed by Trooper Christopher Winesburg (Grievant) and directed PSP to reimburse Grievant for pay denied during a seventeen-day suspension that PSP imposed on Grievant pursuant to section 4 of the Confidence in Law Enforcement Act[2] (CILEA), 53 P.S. § 752.4. We affirm.

Grievant is a Pennsylvania State Trooper and a member of the PSP unit covered under the Act 111 collective bargaining agreement (CBA) between PSP and the Pennsylvania State Troopers' Association (Association).[3] On the weekend of March 1, 2008, Grievant was involved in an incident with Angela Dempsey after both left a nightclub in Ocean City, Maryland. Ocean City police were called to the scene, but they did not file criminal charges against Grievant or against Trooper Ryan Wietry, who had accompanied Grievant to the club and was present during the incident. However, on March 13, 2008, Dempsey filed a private complaint against Grievant, (R.R. at 210a–11a, 440a–42a), and he was charged with second degree assault under the Maryland Criminal Code. The

1. The Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10 is known as Act 111. Act 111 governs collective bargaining between public employers and their police and fire departments.

2. Act of January 29, 2004, P.L. 4.

3. Pursuant to Act 111, the Association is the exclusive, recognized bargaining agent for all PSP members excluding the Commissioner, Deputy Commissioners and cadets. (Article 1 of the CBA, R.R. at 15a.) The CBA sets forth wages, hours, benefits and other terms and conditions of employment for bargaining unit members. (R.R. at 1a–95a.)

penalty associated with conviction on that offense is equivalent to the penalty for a felony of the second degree in Pennsylvania, 18 Pa.C.S. § 106(b)(3), and, therefore, would prohibit Grievant's employment as a law enforcement officer under section 3 of the CILEA, 53 P.S. § 752.3.[4] Thus, on April 15, 2008, PSP suspended Grievant without pay pending the outcome of the criminal charge. (R.R. at 428a–30a.) In doing so, PSP acted pursuant to section 4 of the CILEA, 53 P.S. § 752.4, which requires that "a law enforcement officer charged with an offense that would prohibit employment as such under section 3 [of the CILEA] shall immediately be suspended from employment until final disposition of the charge...."[5]

The charge against Grievant was *nolle prossed* on May 5, 2008, and, thereafter, PSP notified Grievant that his CILEA–mandated suspension was rescinded. (R.R. at 431a.) Although Grievant was returned to work, he was placed on restricted duty pending an internal investigation by PSP regarding his actions during the Maryland incident. (R.R. at 400a; 432a–33a.) On May 20, 2008, Grievant filed a grievance pursuant to Article 28 of the CBA,[6] requesting rescission of the CILEA–mandated, seventeen-day suspension without pay and seeking payment of wages lost during that period.[7] (R.R. at 424a–27a.) While this grievance was being processed, PSP conducted its internal investigation, (R.R. at 401a–02a), and, on February 25, 2009, PSP notified Grievant that he was suspended for fifteen days without pay based on violations of six PSP field regulations.[8] (R.R. at 405a–06a.) PSP also dis-

---

4. Section 3 of the CILEA provides as follows. A Commonwealth agency, State-related institution, political subdivision, municipal authority, local, regional or metropolitan transportation authority or any other person shall not employ or continue to employ an individual as a law enforcement officer when the individual has been convicted of any of the following:

 (1) An offense graded a felony or a serious misdemeanor.

 (2) An offense in another jurisdiction, state, territory or country in accordance with the laws of that jurisdiction, state, territory or country, and the offense is equivalent to an offense specified in paragraph (1) regardless of its grading in that jurisdiction, state, territory or country.

 53 P.S. § 752.3.

5. Section 4 of the CILEA provides as follows. Except in the case of a member of the Pennsylvania State Police, a law enforcement officer charged with an offense that would prohibit employment under section 3 shall be immediately suspended from employment as a law enforcement officer until final disposition of the charge or upon acceptance into a program of Accelerated Rehabilitative Disposition, whichever occurs first. In the case of a member of the Pennsylvania State Police, a law enforcement officer charged with an offense that would

prohibit employment as such under section 3 shall immediately be suspended from employment until final disposition of the charge or upon acceptance into a program of Accelerated Rehabilitative Disposition, whichever occurs first. If a judge terminates the participation of a law enforcement officer in a program of Accelerated Rehabilitative Disposition for an offense that would prohibit employment under section 3 prior to completion in accordance with Pa.R.Crim.P. No. 318 (relating to procedure on charge of violation of conditions), the suspension previously imposed shall be reinstated until final disposition of the charge.

 53 P.S. § 752.4.

6. Article 28 of the CBA provides for a grievance procedure by which a member may challenge, *inter alia*, the imposition of "all matters of discipline" through the grievance and arbitration procedure. (R.R. at 38a.)

7. On the Grievance Form, Grievant actually requests wages for a twenty-two day suspension period; however, this number later was amended to seventeen days. (R.R. at 120a.)

8. Grievant was administratively charged with violating field regulation (FR)1–1.02 (Unbecoming Conduct); FR1–1.03 (Conformance to

ciplined Trooper Wietry in connection with the Maryland incident, (R.R. at 419a–20a), and Trooper Wietry and Grievant each filed a grievance challenging the discipline imposed.[9] (R.R. at 409a–10a; 417a–18a).

Thereafter, pursuant to the CBA, the Association demanded arbitration regarding PSP's administrative penalties against Trooper Wietry and Grievant. In addition, the Association demanded arbitration of the seventeen days of pay withheld from Grievant due to the CILEA suspension. Thereafter, Ralph Colflesh (Arbitrator) was appointed to hear and decide the following three issues:

1. Did [PSP] have just cause to suspend [Grievant] for fifteen days? If not, what shall the remedy be?

2. Did [PSP] have just cause to reprimand Trooper Wietry? If not, what shall the remedy be?

3. Did [PSP] have the right to withhold pay from [Grievant] for the seventeen days he was suspended pursuant to the [CILEA]? If not, what shall the remedy be?

(Arbitrator's op. at 5.)

At evidentiary hearings held on May 5, 2009, and July 20, 2009, both parties presented witnesses and non-testimonial evidence in support of their respective positions, and, following the submission of briefs, the record was closed. In an Award Without Opinion (Award), issued August 19, 2009, the Arbitrator sustained the grievances as to the alleged violations of field regulations by Grievant and Trooper Wietry. Concluding that there was no

"just cause" for discipline based on those alleged violations, the Arbitrator rescinded Grievant's fifteen-day suspension without pay and restored his wages for that period, and the Arbitrator rescinded the letter of reprimand issued to Trooper Wietry. (Award at 1–2.) These portions of the Arbitrator's Award are not challenged here.

With respect to the issue of the CILEA–imposed suspension of Grievant, the Arbitrator stated as follows:

Further, although the Commonwealth had not only the right but the obligation under the [CILEA] to suspend [Grievant's] employment during the pendency of certain privately lodged criminal charges against him in Maryland, its *decision to withhold wages* for the period of that suspension from employment *after those charges were "nolle prossed" was a disciplinary action which required "just cause"* under the parties' [CBA]. There was insufficient evidence to convince the [Arbitrator] that such "just cause" existed. Therefore, the Association's grievance *as to the 17–day denial of pay* is sustained.

(Award at 2, emphasis added.) Thereafter, in response to a request from PSP, the Arbitrator issued an opinion in support of his Award. PSP now petitions this court for review of that Award.

■ This court's scope of review in an appeal of a grievance arbitration award under Act 111 is narrow certiorari. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt),*

Laws); FR1–1.07 (Badge of Office); FR1–2.13 (Cooperation with other Agencies); FR1–1.22 (Use of Alcohol Off Duty); and FR1–1.28 (Internal Investigations). (R.R. at 405a–06a; *see* R.R. at 435a–38a.)

9. Following an investigation, PSP charged Trooper Wietry with violating five FRs, later revised to four FRs, and imposed a five-day

suspension without pay. (R.R. at 399a, 403a–04a, 407a–08a, 419a–20a, 422a–23a.) However, after the first day of arbitration hearings, PSP withdrew two of the charges against Trooper Wietry and revised his penalty to a written reprimand. (R.R. at 653a–54a.)

540 Pa. 66, 656 A.2d 83 (1995). Narrow certiorari permits inquiry only into the following four aspects of an Act 111 arbitrator's award: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; or (4) deprivation of constitutional rights.[10] *Id.* PSP's arguments implicate the first and third of these permissible inquiries. Thus, we must consider whether the Arbitrator acted within the scope of his jurisdiction and authority by issuing an Award directing that Grievant be reimbursed for pay denied during his seventeen-day, CILEA–mandated suspension.[11]

### Excess of Power

The definition of what constitutes an excess of an arbitrator's powers is far from expansive. An arbitrator may not mandate that an illegal act be carried out; he or she may only require a public employer to do that which the employer could do voluntarily. *Pennsylvania State Police v. Pennsylvania State Troopers Association (Smith)*, 559 Pa. 586, 741 A.2d 1248 (1999) (citing *Betancourt*). Furthermore, the award must encompass only terms and conditions of employment and may not address issues outside of that realm. *Id.* Essentially, if the acts the arbitrator mandates the employer to perform are legal and relate to the terms and conditions of employment, then the arbitrator did not exceed his or her authority. *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 564 Pa. 290, 768 A.2d 291 (2001). An error of law alone will not support a finding that an arbitrator exceeded his or her powers. *Id.*

Here, PSP contends that the Arbitrator improperly interpreted section 4 of the CILEA to allow rescission of the suspension and payment of wages where the underlying charges were *nolle prossed.* PSP reasons that the CILEA *required* PSP to suspend Grievant from employment during the period when felony charges were pending against him, and, therefore, PSP cannot voluntarily rescind Grievant's suspension because that would effectively mean that the suspension never occurred. Thus, according to PSP, the Arbitrator exceeded his power by issuing an Award mandating PSP to act in direct contravention of the CILEA. We disagree.

Initially, we point out that, while the Arbitrator's Award directed PSP to rescind Grievant's fifteen-day suspension related to alleged field regulation violations, the Award did *not* require PSP to rescind

---

10. The standard by which we review an arbitrator's determination of these issues depends on the nature of the issue in the case. *Pennsylvania State Police v. Pennsylvania State Troopers Association*, 840 A.2d 1059 (Pa. Cmwlth.), *appeal denied*, 578 Pa. 711, 853 A.2d 363 (2004). Where resolution of the issue turns on a pure question of law, or the application of law to undisputed facts, our review is plenary. However, where, as here, it depends upon fact-finding or upon interpretation of the collective bargaining agreement, we apply the extreme standard of deference applicable to Act 111 awards; that is, we are bound by the arbitrator's determination of these matters even though we may find it to be incorrect. *Id.*

11. PSP frames the issue somewhat differently, stating "Did the Arbitrator exceed his power and act outside the scope of his jurisdiction by construing the CILEA–mandated suspension as discipline that requires 'just cause' or rescission where the underlying criminal charges were *nolle prossed?* " (PSP's brief at 4.) However, as discussed later, a close reading of the Arbitrator's award establishes that the Arbitrator did *not* determine that the CILEA–mandated *suspension* itself was discipline that required "just cause" or rescission. Rather, the Arbitrator determined that PSP's *continued denial of pay* after the charges were dismissed constituted a disciplinary action requiring proof of "just cause" under the parties' CBA. (Award at 2.)

the CILEA–mandated suspension itself. The Arbitrator never questioned, and, in fact, confirmed, the propriety of that suspension under the statute. Instead, in an effort to confine himself to subjects covered by the CBA, the Arbitrator framed the issue for determination as whether PSP could continue to withhold pay from Grievant for the time that he was suspended under the CILEA once the underlying charge was *nolle prossed.* Thus, contrary to PSP's contention, we need not determine whether the Arbitrator could direct PSP to rescind a suspension imposed under the CILEA;[12] rather, we must determine only whether the Award directing PSP to reimburse Grievant for the seventeen-day denial of pay amounted to the ordering of an illegal act under the CILEA.

We reject PSP's claim that the Arbitrator's Award mandates PSP to violate the CILEA. Although that statute requires PSP to suspend from employment any law enforcement officer charged with a qualifying criminal offense, we disagree with PSP that the CILEA unambiguously mandates that the suspension be without pay.[13] Instead, the "without pay" portion of the suspension is a disciplinary measure derived from Article 26, Section 2, of the CBA.[14] Moreover, the CILEA does not

---

12. It is interesting to note that, despite PSP's current claim that it could not voluntarily rescind Grievant's CILEA–mandated suspension, this appears to be exactly what PSP did when, following disposition of the felony charge in Grievant's favor, PSP notified Grievant that his CILEA–mandated suspension was *"rescinded."* (R.R. at 431a, emphasis added.)

13. Citing the definition of "employment" as "work for which one has been hired and *is being paid,"* PSP argues that, because the CILEA mandates suspension "from employment," the statute clearly and unambiguously means suspension "without pay." (PSP's brief at 15–16.) Based on this alleged plain meaning, PSP contends that the Arbitrator's award, which orders rescission of the CILEA–mandated suspension where the criminal charges were *nolle prossed,* conflicts with the legislative intent. We cannot agree. Logically, every job suspension is a suspension from employment; thus, applying PSP's reasoning, there never could be a suspension with pay. Yet, the Association points out, along with examples demonstrating, that a suspension may be achieved with or without pay. Moreover, both the executive and legislative branches of Commonwealth government have demonstrated an ability to specifically designate a suspension as one without pay. (Association's brief at 8–9.) The General Assembly simply did not include such a designation in the CILEA.

14. Article 26 of the CBA deals with discipline, and Section 2 of that Article, entitled Suspen-

sion Without Pay, provides, in relevant part, as follows:

> A member shall not be suspended without pay *unless the conduct falls within the purview of the Governor's Code of Conduct* or the member is notified of dismissal after selecting the grievance procedure or recommendation for probationary review.

(R.R. at 33a, emphasis added). Part III, ¶2 of the Governor's Code of Conduct, in turn, requires that an employee formally charged with criminal conduct which constitutes a felony "shall be suspended without pay," and, if convicted, shall be terminated. (R.R. at 675a.) The Code of Conduct does not indicate what happens if there is no conviction; however, interestingly, Article 26, Section 10, of the CBA provides, in relevant part:

> A member who is suspended without pay and submits a Request for Approval of Supplementary Employment will be notified of the approval or denial within three working days. .... A member who has a previously approved Request for Supplementary Employment, and is suspended without pay, may engage in [that] employment, and except as required by law, shall not be required to offset *reimbursement* if the member is found not guilty of all charges.

(R.R. at 37a, emphasis added). This section of the CBA indicates that a law enforcement officer charged with a felony that requires suspension without pay may be reimbursed for wages lost during the suspension where the criminal charges are dismissed.

prohibit PSP from reimbursing a law enforcement officer for wages lost during suspension after criminal charges are dropped, whereas the CBA suggests that this result would be appropriate.[15] Furthermore, the Award here certainly was related to the terms and conditions of employment as it concerned a matter of wages to be paid to a bargaining unit member.[16] Therefore, the Arbitrator has not exceeded his powers, and his Award withstands scrutiny under this aspect of the narrow certiorari scope of review.

### Lack of Jurisdiction

 This court has held that an arbitrator exceeds his jurisdiction when he addresses issues not submitted to him. *Pennsylvania State Police v. Pennsylvania State Troopers Association*, 840 A.2d 1059 (Pa.Cmwlth.), *appeal denied*, 578 Pa. 711, 853 A.2d 363 (2004). Here, the propriety of PSP's refusal to reimburse Grievant for wages lost during his CILEA–mandated suspension following resolution of the charge against him was submitted to the Arbitrator.

We also have held that arbitrators are prohibited from entering awards outside the scope of bargainable issues set forth in Section 1 of Act 111, 43 P.S. § 217.1 (providing that policemen have the right to bargain over terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits). *Id.* Under Article 28, Section 1, of the CBA, grievances are limited to matters involving interpretation of the CBA, including all matters of

discipline. (R.R. at 38a). In this regard, PSP argues that the Arbitrator exceeded his jurisdiction by engaging in statutory interpretation and construing the "unambiguous" CILEA–mandated "suspension without pay" as equating to a disciplinary action requiring just cause review under the CBA when the criminal charges are *nolle prossed.* According to PSP, because CILEA suspensions are not discipline within the purview of the CBA, wages withheld during a CILEA suspension also are beyond the scope of grievance arbitration.

The flaw in PSP's argument is that it rests on the erroneous premise that the CILEA mandates, not merely a suspension, but a suspension without pay.[17] Thus, while the decision to suspend Grievant under the CILEA was not a disciplinary act, it does not necessarily follow that the decision to withhold pay *after* the suspension was lifted was not discipline. Because the repayment decision is within the discretion of the employer, PSP's refusal to reimburse Grievant after the charge against him was *nolle prossed* could be interpreted as a matter of discipline subject to arbitral review for "just cause" under the CBA. That is what the Arbitrator did here.

Defining "discipline" as any act by the employer which has adverse employment consequences to an employee and is motivated by something the employer deems undesirable, the Arbitrator determined that PSP's decision to continue withhold-

---

15. *See* Article 26, Section 10, of the CBA.

16. Under Act 111, "terms and conditions of employment" include "compensation, hours, working conditions, retirement, pensions and other benefits...." 43 P.S. § 217.1.

17. The Association convincingly asserts that the "automatic suspension" provisions of the CILEA were not designed as a punitive measure, but rather to preserve confidence in law enforcement in the Commonwealth by removing law enforcement officers from the workplace, thereby preventing them from exercising law enforcement authority, while facing serious criminal charges.

ing Grievant's pay after the CILEA suspension ended fit within the scope of this definition, making the issue arbitrable.[18] After finding that PSP's denial of reimbursement to Grievant after charges against him were dismissed was disciplinary, the Arbitrator determined that PSP lacked just cause to support that denial, and he directed PSP to pay Grievant seventeen days of wages. Because the Arbitrator only addressed an issue put before him, and because that issue was arbitrable pursuant to the CBA, we conclude that the Arbitrator did not act outside the scope of his jurisdiction in issuing the Award.[19]

Accordingly, we affirm.

## ORDER

AND NOW, this 13th day of April, 2010, the arbitration award sustaining the grievance of Trooper Christopher J. Winesburg in the above captioned matter is hereby affirmed.

18. Article 28, Section 1 of the CBA sets forth an arbitrator's responsibilities and provides, in relevant part, as follows:

Issues concerning timeliness or procedurally defective cases or matters of arbitrability will be decided prior to hearing the merits of the grievance. The arbitrator shall neither add to, subtract from nor modify the provisions of this [CBA] or of the arbitration awards. The arbitrator shall confine himself/herself to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted to him/her.
(R.R. at 41 a.)

19. Importantly, we note that the Arbitrator did not rule out the possibility that, even in cases where a criminal charge is dismissed, an arbitrator making a just cause determination could nevertheless find that the conduct that underlay the criminal charge would warrant a denial of back pay for at least part, if not all, of the CILEA suspension as a punitive measure. (Arbitrator's op. at 16.)