# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh              :
                                    :
         v.                  :
                                      : No. 954 C.D. 2017
Fraternal Order of Police    : Argued: May 7, 2018
Fort Pitt Lodge No. 1,      :
                                      :
        Appellant         :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                  **FILED:  June 21, 2018**

        This matter is an appeal from an order of the Allegheny County Court of Common Pleas (common pleas court) that vacated an Act 111[1] grievance arbitration award under the collective bargaining agreement (CBA) between the City of Pittsburgh (City) and the Fraternal Order of Police Fort Pitt Lodge No. 1 (FOP) concerning pay for City police officers who are required to work on one of their two consecutive weekly days off.  For the reasons set forth below, we affirm.

        The CBA provides that City police officers' normal workweek shall consist of five workdays and two consecutive days off, referred to as pass days.

---

[1] The Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1–217.10, commonly referred to as Act 111, governs the collective bargaining rights of police and fire personnel.

(CBA §§ 3.E.2, 8.A.2, Reproduced Record (R.R.) at 75a, 93a.)[2]  The CBA states that its provisions concerning the normal hours of work "shall not be construed, either, as a guarantee of hours of work and pay or as a basis for calculating overtime hours of work and pay, except as provided for, otherwise, in this Agreement." (*Id.* § 8.A, R.R. at 93a.)

> Call Outs - Except for Court or Magistrate sessions covered by Paragraph B above, <u>an employee called out to work for any period other than the period of his or her previously scheduled hours of work shall be guaranteed at least four (4) hours of work or pay and shall be compensated at applicable overtime pay rates for such 'call out' time</u>. Previously scheduled hours of work of any affected employee shall not be rearranged or reduced because of call out work under these provisions.

(CBA § 8.D, R.R. at 96a) (emphasis added).  The CBA provides that "[i]f officers are forced to work on pass days, then the order of selection shall be by inverse seniority." (*Id.* § 9.C, R.R. at 100a.)  The CBA, however, contains no provision specifically addressing compensation for canceled pass days or excluding canceled pass days from the general provision for compensation for call outs in Section 8.D. In collective bargaining, the FOP had unsuccessfully sought to make the following change in the CBA:

---

[2] The CBA in the record states on its face that it is the CBA between the City and the FOP for the period January 1, 2010 to December 31, 2014 and states "Draft 4/25/11" on each page.  The CBA also provides that although its term ends December 31, 2014, it "shall remain in force and effect from year to year thereafter unless either party shall notify the other in writing on or before July 1, of 2014 and on or before July 1 of each calendar year thereafter, of any desire to terminate and/or modify any of its provisions in effect at that time, as of the first day of the next following calendar year." (CBA § 25, R.R. at 202a.)  The parties do not dispute that this is the CBA that was in effect in May 2016.

> Pass Day Cancellations (Section 8): Amend Section 8(D) to provide an 8-hour work guarantee and require compensation at the double-time rate on all occasions where an employee is required to work on a pass day.

(Original Record Item (R. Item) 9, Ex. A to City Brief in Support of Common Pleas Court Petition for Review at 3 ¶9.)

Under the CBA, where a special event in the City requires additional police for crowd and traffic control, the private business running or sponsoring the event pays off-duty police officers for this work, known as "secondary employment," at a rate of pay agreed upon by the City and the private business. (CBA § 24, R.R. at 199a-201a.)[3]  The CBA provides that "[a]ll secondary employment will be voluntary" and that "[n]o police officer will be compelled to work for a Secondary Employer."  (*Id.* § 24.2, R.R. at 199a.)  The section of the CBA governing grievances provides that "[t]he Arbitrator shall not have the right to add to, subtract from, modify, or disregard any of the terms or provisions of the Agreement."  (*Id.* § 5.C.3.b, R.R. at 85a.)

On May 1, 2016, the City hosted the 2016 Pittsburgh Marathon. (Arbitration Award, R.R. at 15a.)  There were insufficient secondary employment volunteers to supply the 100 officers needed to provide police coverage for this event. (*Id.*, R.R. at 15a-16a, 19a.)  On May 1, 2016, the City therefore called out 70 police officers to work the Pittsburgh Marathon either before the start of their shift or on what would have been one of their pass days. (*Id.*, R.R. at 16a, 19a.)[4]  The officers required to work on their pass days were selected by inverse seniority.  (*Id.*,

---

[3] *See also City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1 (On-Duty and Off-Duty Pay for Events)*, 111 A.3d 794, 796-97 (Pa. Cmwlth. 2015) (*en banc*).

[4] On-duty police officers, paid in accordance with the CBA, may also work at the same event as officers working secondary employment.  *See On-Duty and Off-Duty Pay for Events*, 111 A.3d at 797.

R.R. at 16a.) The City paid the officers who were required to work the Marathon the overtime rate of pay for those hours. (Common Pleas Court Petition for Review ¶5, R.R. at 207a; R. Item 5, FOP Response to Common Pleas Court Petition for Review ¶5.)

On May 24, 2016, the FOP filed a grievance asserting that the City was required under the CBA to pay the officers required to work before the start of their shift a minimum of four hours of overtime regardless of the number of extra hours worked and to pay officers whose pass day was canceled a minimum of eight hours of overtime and a total of twelve hours of overtime if they were required to report before their regular shift time. (Grievance, R.R. at 42a.) In the grievance, the FOP requested relief on behalf of "any bargaining unit members" who were not paid in accordance with those contentions. (*Id.*) The FOP also asserted that the City violated the CBA because it required officers to work to fill secondary employment positions. (*Id.*; FOP Arbitration Brief, R.R. at 2a.) In the initial stages of the grievance process, the City sustained the grievance with respect to officers for whom May 1, 2016 was their normal workday and who were required to work before the start of their regular shift, agreed that those officers were entitled to a minimum of four hours of overtime pay, and also agreed that officers called in on a pass day were entitled to a minimum of four hours of overtime pay. (Arbitration Award, R.R. at 17a; 7/13/16 City Grievance Response, R.R. at 46a.) The City, however, denied the grievance with respect to the FOP's contentions that officers called out to work on a pass day were entitled to a minimum of eight or twelve hours of overtime, and those portions of the grievance proceeded to arbitration before a single arbitrator. (Arbitration Award, R.R. at 13a, 17a; 7/13/16 City Grievance Response, R.R. at 46a-47a.)

4

The arbitrator held a hearing on the grievance on October 3, 2016. On January 31, 2017, the arbitrator issued an award ruling that the officers required to work on a pass day were entitled to a minimum of eight hours of overtime for their work on May 1, 2016, but rejecting the FOP's contentions that they were entitled to an additional four hours of overtime and that the City violated the CBA provisions on secondary employment. (Arbitration Award, R.R. at 19a-22a.) The arbitrator noted that the CBA "does not specifically address compensation for the cancellation of a pass day." (*Id.*, R.R. at 20a.) The arbitrator also recognized that Section 8.D of the CBA "provides Officers with a minimum of 4 hours of overtime pay when 'called out to work for any period other than the period of his or her previously scheduled hours of work'" and that "[t]his callout provision applied to the cancellation of Officers' pass day on May 1, 2016, setting a minimum of 4 hours of overtime pay for the callout work." (*Id.*, R.R. at 20a-21a (quoting the CBA).) The arbitrator held, however, that officers were entitled to eight hours of overtime pay for being called out to work on a pass day because they were deprived of having a full day off and the normal workday is eight hours. (*Id.*)

The City filed a petition for review in the common pleas court seeking to vacate the arbitrator's award on the ground that the arbitrator exceeded her powers. On June 22, 2017, the common pleas court vacated the arbitrator's award. The court recognized that review of the award was limited to four areas: 1) whether the arbitrator had jurisdiction; 2) regularity of the proceedings; 3) whether the arbitrator exceeded her powers; and 4) whether there was a deprivation of constitutional rights. (Common Pleas Court Op. at 6-7.) The common pleas court vacated the arbitrator's award on the ground that it was unsupported by anything in the CBA and "fashion[ed] the officers' compensation beyond that which they have

5

collectively bargained to receive," stating that the arbitrator "form[ed] a remedy for the Police when no such remedy was provided by the actual language of the agreement." (*Id.* at 9.) The FOP timely appealed the common pleas court's decision to this Court.[5]

Section 7(a) of Act 111 provides that an arbitration award under its provisions "shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved" and that "[n]o appeal therefrom shall be allowed to any court." 43 P.S. § 217.7(a). Judicial review of police grievance arbitration awards is therefore limited to narrow *certiorari* review under which the arbitration award may be set aside only 1) if the arbitrator lacked jurisdiction to issue the award; 2) for irregularity in the arbitration proceedings; 3) if the arbitrator exceeded her powers; or 4) where there was a deprivation of constitutional rights. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1266 (Pa. 2009); *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5 (Staff Inspector Appeal)*, 768 A.2d 291, 294 (Pa. 2001); *Pennsylvania State Police v. Pennsylvania State Troopers Association (Smith & Johnson)*, 741 A.2d 1248, 1251 (Pa. 1999); *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 656 A.2d 83, 89-90 (Pa. 1995).

A police grievance arbitration award may be set aside as exceeding the arbitrator's powers if the award requires the public employer to commit an illegal act or if the award orders an act that does not relate to terms or conditions of employment. *Staff Inspector Appeal*, 768 A.2d at 296-97; *Smith & Johnson*, 741

---

[5] The Court's review of whether the common pleas court erred in vacating the arbitration award is plenary. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1266 (Pa. 2009).

A.2d at 1252; *Betancourt*, 656 A.2d at 90. In contrast, mere errors of law are insufficient to set aside such an award as exceeding the arbitrator's powers. *Staff Inspector Appeal*, 768 A.2d at 297; *Smith & Johnson*, 741 A.2d at 1252; *Betancourt*, 656 A.2d at 90. Accordingly, the fact that an arbitrator erroneously interpreted or misapplied language in the collective bargaining agreement in resolving an individual grievance is not a valid basis for vacating an Act 111 arbitration award. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Keyes)*, 54 A.3d 129, 133-34 (Pa. Cmwlth. 2012); *Borough of Montoursville v. Montoursville Police Bargaining Unit*, 958 A.2d 1084, 1091-92 (Pa. Cmwlth. 2008); *Bensalem Township v. Bensalem Township Police Benevolent Association, Inc.*, 803 A.2d 239, 242-43 (Pa. Cmwlth. 2002), *appeal dismissed as improvidently granted*, 849 A.2d 1152 (Pa. 2004); *Township of Ridley v. Fraternal Order of Police Lodge No. 27*, 718 A.2d 872, 875 (Pa. Cmwlth. 1998).

An Act 111 arbitrator may not, however, equitably reform the terms of a collective bargaining agreement under the guise of a grievance arbitration. *City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1 (On-Duty and Off-Duty Pay for Events)*, 111 A.3d 794, 801-02 (Pa. Cmwlth. 2015) (*en banc*). In *On-Duty and Off-Duty Pay for Events*, in a grievance arbitration under the same CBA at issue here, the arbitrator held that on-duty police officers assigned to work special events were entitled to be paid at the same rate of pay as off-duty officers working the same event in secondary employment, on the ground that they were doing the same work at the same event. *Id.* at 797-98. This Court *en banc* rejected the argument that the award could not be set aside under narrow *certiorari* review because it related to a term and condition of employment and did not require an illegal act, and affirmed the trial court's order vacating the award. *Id.* at 800-02.

The Court concluded that the arbitrator's award exceeded his jurisdiction and powers as a grievance arbitrator because he reformed the CBA, rather than interpreting what the agreement provided, stating:

> It is the substance of the award, not merely the subject matter of the award or the question put to the arbitrator, that is critical to whether the reviewing court's review has confined itself to the limits of narrow *certiorari*.
>
> The arbitrator had jurisdiction over the question put to him, as found by the trial court. However, in fashioning his award, the arbitrator exceeded both his jurisdiction and authority. The purpose of grievance arbitration is to resolve disputes over a provision of an existing contract. The arbitrator explained his award on the grounds that it would be "inequitable" not to give on-duty officers the same wage paid to an off-duty officer. An Act 111 grievance arbitrator does not have jurisdiction or authority to rely on principles of equity to reform the CBA.

*Id.* at 801. The Court held that such an arbitration award exceeded the arbitrator's powers because it converted the grievance arbitration before him into an interest arbitration, explaining:

> Instead of acting solely as a grievance arbitrator, the arbitrator stepped into the shoes of an interest arbitrator by issuing an award applicable to all police officers in the bargaining unit, not just the grievants. The arbitrator decided, apparently, what the CBA should say and did not rely upon what it does say. This he lacked power to do.
>
> &ast; &ast; &ast;
>
> In sum, the arbitrator had jurisdiction to decide a grievance that the wages paid to on-duty police officers violated the CBA. However, in fashioning this award, he acted as an interest arbitrator, which exceeded his jurisdiction and authority in a grievance arbitration.

8

*Id.* at 801-02. The Supreme Court denied the FOP's petition for allowance of appeal of this decision. *City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1 (On-Duty and Off-Duty Pay for Events)*, 124 A.3d 310 (Pa. 2015).

The FOP argues that the common pleas court could not set aside the arbitrator's award because the award does not require an illegal act and relates to terms and conditions of employment and because any error by the arbitrator is at most an error of law. We do not agree.

The FOP is correct that the award does not require an illegal act by the City. It also relates to terms and conditions of employment, as it concerns compensation and hours of employment. Section 1 of Act 111, 43 P.S. § 217.1; *Staff Inspector Appeal*, 768 A.2d at 297. The arbitration award did not, however, merely misapply language in the collective bargaining agreement in resolving an individual grievance. Rather, it reformed the CBA to add a provision for compensation for loss of pass day that is not in the CBA and made this ruling as to all affected officers in the bargaining unit. The arbitrator acknowledged that the CBA did not contain any provision for additional compensation for the cancellation of a pass day. (Arbitration Award, R.R. at 20a.) Moreover, the arbitrator held that Section 8.D of the CBA applied to the cancellation of pass days and provided that four hours was the minimum overtime pay set by the CBA for such a callout. (*Id.*, R.R. at 20a-21a.) Instead of basing her award on an interpretation of these provisions or any other provision of the CBA related to compensation, overtime, or callouts, the arbitrator held that officers were entitled to a minimum of eight hours of overtime pay for cancellation of a pass day because "the City could not partially cancel a pass day without negating the concept of 2 consecutive days off." (*Id.*, R.R. at 20a.) In essence, the arbitrator created a remedy for loss of a pass day that she acknowledged

9

did not exist in the CBA; she "decided, apparently, what the CBA should say and did not rely upon what it does say." *On-Duty and Off-Duty Pay for Events*, 111 A.3d at 801. Such an addition to the CBA is the function of an interest arbitration and exceeded the arbitrator's powers in this grievance arbitration. *Id.* at 801-02.

Because the arbitrator exceeded her powers, the common pleas court properly vacated the arbitrator's award. We therefore affirm the common pleas court's order.

_____
JAMES GARDNER COLINS, Senior Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh          :
                                  :

          v.            :

                                  : No. 954 C.D. 2017

Fraternal Order of Police    :

Fort Pitt Lodge No. 1,      :

                                  :

          Appellant       :

## **O R D E R**

AND NOW, this 21st day of June, 2018, the order of the Court of Common Pleas of Allegheny County in the above-captioned case is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge