**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| CITY OF PITTSBURGH, | : | No. 2 WAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered 6/21/18 |
| | : | at No. 954 CD 2017, affirming the order |
| v. | : | of the Court of Common Pleas of |
| | : | Allegheny County entered 6/22/17 at |
| | : | No. SA 17-000208 |
| FRATERNAL ORDER OF POLICE, FORT | : | |
| PITT LODGE NO. 1, | : | |
| | : | |
| Appellant | : | ARGUED:  October 15, 2019 |

*OPINION*

**CHIEF JUSTICE SAYLOR**                          **DECIDED:  JANUARY 22, 2020**

The appellant, a police bargaining unit proceeding on behalf of its members, seeks the benefit of a grievance arbitration award that was overturned by a statutory appeals court.  The matter arises in the context of the special statutory provisions governing collective bargaining arrangements between police and firefighting personnel and their public employers, known as "Act 111."[1]

The collective bargaining agreement governing the terms and conditions of employment by officers of the City of Pittsburgh's Bureau of Police prescribes that a

---

[1] Police and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, No. 111 (as amended, 43 P.S. §§217.1-217.10).

normal workweek consists of five workdays and two consecutive days off, also referred to as "pass days." *See* Working Agreement between the City of Pittsburgh and the Fraternal Order of Police Fort Pitt Lodge No. 1, January 1, 2010 - December 31, 2014 (the "CBA" or the "Working Agreement") §8.A.2.[2]  The CBA also admonishes that its provisions concerning normal hours of work "shall not be construed, either, as a guarantee of hours of work and pay or as a basis for calculating overtime hours of work and pay, except as provided for, otherwise, in this Agreement." *Id.* §8.A.

The following general rule pertains to "call outs," or days when officers are required to work outside their normal employment schedule:

> an employee called out to work for any period other than the period of his or her previously scheduled hours of work shall be guaranteed at least four (4) hours of work or pay and shall be compensated at applicable overtime pay rates for such 'call out' time.  Previously scheduled hours of work of any affected employee shall not be rearranged or reduced because of call out work under these provisions.

CBA §8.D.

The CBA also authorizes "secondary employment," via which members of the bargaining unit may be permitted by the City to wear the Pittsburgh Police uniform and use police equipment at special events and to be paid by a secondary employer.  CBA §24.  Per the agreement, however, all secondary employment is subject to the City's approval and must be voluntary, such that "[n]o police officer will be compelled to work for a Secondary Employer."  CBA §24(2).

---

[2] Although the term stated at the outset of the CBA expired prior to the events giving rise to the dispute in this case, the agreement also provides that it remains in effect from year to year, unless and until one of the parties expresses a desire to modify or cancel. *See* CBA §25.

Finally, the CBA provides for mandatory arbitration of grievances but cautions that "[t]he Arbitrator shall not have the right to add to, subtract from, modify, or disregard any of the terms or provisions of the Agreement." CBA §5.C.3.b.

The City hosts an annual marathon which, in 2016, was organized and administered by several large, private companies. About 100 police officers were needed to provide crowd control, road closures, and traffic management for the event. Initially, the Bureau of Police solicited volunteers from among those officers who would otherwise be off duty to work under a secondary employment arrangement. Numerous positions remained unfilled, however, and the Bureau proceeded to require about 70 officers to work on their pass days. Email of M. Isaj, dated Apr. 28, 2016 ("It was decided today at the Command Staff Meeting that we will be forcing City Wide the least senior 70 Officers, and least senior 9 Sergeants to work the Marathon."). These officers were paid a minimum of four hours overtime at a time-and-a-half rate, plus additional overtime for any more hours worked. Pursuant to the terms of the CBA, the appellant herein -- the Fraternal Order of Police (the "FOP") -- filed a grievance challenging the amount of compensation provided. *See* CBA §5 (Grievance Procedure).

The gravamen of the FOP's complaint was its assertion that the City violated the bargaining agreement by "mandating officers work secondary employment when the CBA states it is strictly voluntary." Undated Brief for the FOP, Fort Pitt Lodge No. 1 in Grievance 2016-026 (City, Bureau of Police) (hereinafter "Pittsburgh Marathon Overtime Pay Grievance"), at 2; *accord* Pittsburgh Marathon Overtime Pay Grievance, at 1 ("The purpose of canceling pass days and calling officers into work before their regularly scheduled shift was to fill Secondary Employment (Pittsburgh Marathon) posts of a preplanned Secondary Employment detail which the City could not fill through volunteers."). Along these lines, the FOP referred to the event as "the May 1, 2016

Callout and Pass Day cancellation for a Secondary Employment detail." *Id.* As relevant here, the FOP claimed that the officers should have received a minimum of eight hours of overtime pay. *See* Brief for the FOP in Pittsburgh Marathon Overtime Pay Grievance, at 3.[3] Notably, the grievance placed specific sections of the CBA before the arbitrator, namely: "Section 4 Management, Section 8 Hours of Work, Section 24 Secondary Employment, Section 6 Salaries, Section 9 Overtime, and Section 17 Scope of Agreement." Pittsburgh Marathon Overtime Pay Grievance at 1.

In response, the City took the position, rather cryptically, that "secondary employment . . . is not at issue here." Undated Brief for the City in Pittsburgh Marathon Overtime Pay Grievance, at 6; *see also id.* at 6 n.1 ("Although the Marathon contained secondary employment positions, the call outs issued here were in no way connected to secondary employment as defined by the contract."). The City also observed that "the Commonwealth Court has already decided that the City is not obligated to pay officers working on-duty at special events the same rate as officers working secondary employment details." *Id.* (citing *City of Pittsburgh v. FOP, Fort Pitt Lodge No. 1 (On-Duty and Off-Duty Pay for Events)*, 111 A.3d 794, 802 (Pa. Cmwlth.), *appeal denied*, 633 Pa. 750, 124 A.3d 310 (2015) (*per curiam*)).[4]

---

[3] The FOP also asserted that officers who already were scheduled for duty but were required to report early on account of the marathon were entitled to additional compensation. That matter was separately resolved during the course of the arbitration proceeding and is not presently relevant.

[4] The City's explanation seems to be that, having failed to secure enough officers willing to be paid by the marathon's promoters, the City undertook to shoulder the financial burden by mobilizing the necessary officers to support the event via the primary employment infrastructure. The parties have not supplied much further detail, presumably since -- as developed below -- the secondary-employment dynamic is no longer directly relevant to their arguments.

The City stressed that the CBA specifically established a rate of pay for scenarios in which officers are required to work outside of their regularly scheduled shifts, *see* CBA §8.D, and that officers had been compensated by the City in strict conformity with this provision. *See* Brief for the City in Pittsburgh Marathon Overtime Pay Grievance, at 7 ("[A]n officer's only contractual right to compensation for being called out to work on a pass day is provided for in Section 8[.D]."); *id.* at 6 ("This provision is meant to ensure that any inconvenience an officer suffers from a call out is compensated by [a] four hour guarantee[.]"). It was the City's position that, "[s]ustaining this grievance would impose . . . an entirely new contractual obligation upon the City and, therefore, exceed the scope of grievance arbitration." *Id.*

At the initial administrative levels of review, *see* CBA §5.C.1-.2, the grievance was denied in relevant part. The presiding city officials reasoned that officers called out to work at the marathon were paid in accordance with the CBA, because they received overtime pay for all hours worked, subject to a four-hour minimum. *See* Letter of Assistant City Solicitor dated July 13, 2016, in Pittsburgh Marathon Overtime Pay Grievance, at 2-3 (invoking, in substance, CBA §8.D). The officials also disagreed with the FOP's position that those officers whose pass days were canceled were entitled to a minimum of eight hours of pay at the overtime rate simply for being called out to work. *See id.*

Per the CBA, an arbitration ensued. *See* CBA §25.C.3. Initially, the arbitrator rejected the FOP's lead contention that the City had violated Section 24.2 of the agreement. According to the arbitrator:

> The evidence does not indicate that the City breached [Section 24.2's prohibition against forcing officers to accept secondary employment]. Rather, as documented in [email announcements by the Bureau of Police], it addressed the situation by cancelling the pass days of approximately 70

> Officers, forcing these Officers to come in and work various hours on their scheduled day off.

Pittsburgh Marathon Overtime Pay Grievance, at 8-9 (J. Desimone Jan. 31, 2017). Although the arbitrator concluded that the City "was permitted to cancel the Officers' pass day to work the detail," she nevertheless discerned an issue as to the appropriate compensation for such cancellation. *Id.* at 9.

In this respect, the arbitrator apparently regarded cancellation of pass days and summoning (or "calling out") off-duty officers for work to be entirely separate and distinct matters. Without offering any supportive basis for this distinction, and initially putting aside the specific call-out language of Section 8.D of the CBA, the arbitrator found that there was nothing in the CBA governing compensation for cancelled pass days. *See id.* at 9 ("[T]here is no language defining the compensation to be paid for the cancellation of a pass day, whether a pass day can be partially cancelled, or when a pass day shift begins for purposes of cancellation and compensation."). The arbitrator thus reasoned that it was necessary to "look to related contractual language regarding hours of work and compensation in order to determine the parties' intent with regard to these pass day subjects." *Id.* at 9.

In this regard, the arbitrator deemed it significant that pass days are to be scheduled in 2-day increments, reasoning as follows:

> Because a pass day is 1 of 2 entire days during the 7-day week, the City could not partially cancel a pass day without negating the concept of 2 consecutive days off, at least for purposes of compensation. In other words, a pass day encompasses the entire day in which the Officer is not required to work his normal 8-hour shift. As such, when the City cancelled Officers' pass day[s] so as to force them to work the 2016 Marathon on May 1, 2016, it effectively cancelled the entire pass day, regardless of the number of forced hours actually worked.

*Id.* at 9.[5]  Given that the normal workday was comprised of eight hours, *see* CBA §8.A.1, the arbitrator concluded that each officer was entitled to eight hours of overtime pay for the cancelled pass day.  *See id.*

Turning to Section 8.D's treatment of call outs -- and having already concluded that call outs differed from pass-day cancellations and that officers were entitled to eight hours of overtime pay based on such "cancellations" -- the arbitrator reasoned, as follows, that Section 8.D had effectively been mooted:

> [Section 8.D's] callout provision applied to the cancellation of Officers' pass day[s] on May 1, 2016, setting a minimum of four hours of overtime pay for the callout work.  Because a pass day is an entire day off encompassing an 8-hour shift, the 4-hour minimum was more than met.  With the callout being the cancellation of the entire pass day, Officers were entitled to 8 hours of overtime pay, even if a lesser number of hours was worked.

*Id.* at 10.  Notably, this passage from the arbitrator's reasoning stands in substantial tension with her initial premises that cancellations and call outs are different, such that -- in spite of the CBA's explicit treatment of compensation for call outs -- there was nothing in the CBA addressing cancellations.

The City filed a petition for review in the common pleas court, *see* 42 Pa.C.S. §933(b), serving as a statutory appeals court.  According to the City, the award exceeded the arbitrator's authority conferred by the CBA and represented an attempt to interject equitable principles as a means of altering the agreement's explicit terms.

---

[5] Among other difficulties associated with the arbitrator's reasoning, her alternative explanation, expressed "[i]n other words," simply does not follow from the initial one.  In this regard, the first proposition stated above concerns the CBA's general approach of allowing for two consecutive days off, and the second one concerns the impact of a call out upon an individual pass day.

The statutory appeals court set the award aside. Initially, the court recognized, as follows, that judicial review of an arbitration award involving police and firemen is narrowly constrained.

> The scope of review applicable to Act 111 grievance arbitration appeal[s] is well settled; that being narrow certiorari review, which allows the court to inquire into only four areas: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights.

*City of Pittsburgh v. FOP, Fort Pitt Lodge No. 1*, No. SA 17-000208, *slip op.* at 6-7 (C.P. Allegheny Oct. 23, 2017) (citing *Town of McCandless v. McCandless Police Officers Ass'n*, 587 Pa. 525, 534, 901 A.2d 991, 996 (2006), and *PSP v. PSTA (Betancourt)*, 540 Pa. 66, 71, 656 A.2d 83, 85 (1995)).

Unfortunately, after referencing narrow certiorari review, the statutory appeals court nevertheless proceeded to apply the essence test, which pertains to judicial review of arbitration awards *outside* the Act 111 context. *See, e.g.,* PSSHE *(Cheyney Univ.) v. State College Univ. Prof'l Ass'n (PSEA-NEA)*, 560 Pa. 135, 150 n.9, 743 A.2d 405, 413 n.9 (1999) ("We make clear that this extremely limited narrow certiorari scope of review is *distinct from, and inapplicable to*, our analysis of the essence test." (emphasis added)). Upon such application, the court found "no authority within the four corners of the collective bargaining agreement to justify the award of January 31, 2017." Indeed, the court characterized the award as being contorted. *See City of Pittsburgh v. FOP,* No. SA 17-000208, *slip op.* at 9. According to the statutory appeals court, the award gave the appearance that "the arbitrator picked various paragraphs and clauses of the agreement and melded the same together to form a remedy for the Police when no such remedy was provided by the actual language of the agreement." *Id.* The court held that neither it nor the arbitrator has authority to "fashion the officers' compensation

beyond that which they have collectively bargained to receive." *Id.* Further, the statutory appeals court emphasized that equitable relief is not permitted in an arbitration proceeding under a contract. *Id.*

The FOP lodged an appeal in the Commonwealth Court. Notably, consistent with the arbitrator's apparent rejection of its position that forcing schedule deviations to compensate for the failure to secure enough officers accepting secondary employment was tantamount to compelling secondary employment, the FOP did not pursue this argument before the intermediate court. *See* Brief for Appellant dated Jan. 3, 2018, in *FOP, Fort Pitt Lodge No. 1 v. City of Pittsburgh*, No. 954 CD 2017 (Pa. Cmwlth.), 2018 WL 4827056, at *4-18. Instead, the FOP criticized the statutory appeals court for erroneously employing the essence test in the Act 111 arbitration context, disregarding the sharply confined parameters of narrow certiorari review, and otherwise departing from the "extreme deference" due an arbitrator. *Id.* (citing, *inter alia*, *Town of McCandless*, 587 Pa. at 532, 901 A.2d at 995).

The Commonwealth Court affirmed. *See City of Pittsburgh v. FOP, Fort Pitt Lodge No. 1*, 189 A.3d 491 (Pa. Cmwlth. 2018). The court recognized that Act 111 admonishes that an arbitration award under the enactment "shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved" and that "[n]o appeal therefrom shall be allowed to any court." *Id.* at 495 (quoting 43 P.S. §217.7(a)). It explained, nonetheless, that to protect against untenable irregularities in the arbitration process, narrow certiorari review pertains. *See id.*

Even so, the intermediate court acknowledged that "mere errors of law are insufficient to set aside such an award as exceeding the arbitrator's powers." *Id.* at 495 (citing, *inter alia*, *Betancourt*, 540 Pa. at 79, 656 A.2d at 90). Accordingly, the court

highlighted that, "the fact that an arbitrator erroneously interpreted or misapplied language in the collective bargaining agreement in resolving an individual grievance is not a valid basis for vacating an Act 111 arbitration award." *Id.* (citations omitted).

The Commonwealth Court cautioned, however, that "[a]n Act 111 arbitrator may not . . . equitably reform the terms of a collective bargaining agreement under the guise of a grievance arbitration." *Id.* (citing *On-Duty and Off-Duty Pay for Events*, 111 A.3d at 801-02 (holding that an Act 111 arbitrator had exceeded his jurisdiction and authority by requiring that on-duty and off-duty officers working the same event in secondary employment were entitled to equal pay as an equitable matter, albeit that such pay equality was not provided for in the applicable collective bargaining agreement)).

The intermediate court proceeded to credit the FOP's observation that the arbitration award under review does not require an illegal act and that it relates to terms and conditions of employment. *See generally City of Phila. v. FOP, Lodge No. 5*, 564 Pa. 290, 299-301, 768 A.2d 291, 296–97 (2001) (discussing these considerations in delineating the parameters of narrow certiorari, excess-of-authority review). Nevertheless, the court reasoned:

> The arbitration award did not, however, merely misapply language in the collective bargaining agreement in resolving an individual grievance. Rather, it *reformed the CBA* to add a provision for compensation for loss of pass day that is not in the CBA and made this ruling as to all affected officers in the bargaining unit. The arbitrator acknowledged that the CBA did not contain any provision for additional compensation for the cancellation of a pass day. Moreover, the arbitrator held that Section 8.D of the CBA applied to the cancellation of pass days and provided that four hours was the minimum overtime pay set by the CBA for such a callout. Instead of basing her award on an interpretation of these provisions or any other provision of the CBA related to compensation, overtime, or callouts, the arbitrator held that officers were entitled to a minimum of eight hours of

overtime pay for cancellation of a pass day because "the City could not partially cancel a pass day without negating the concept of 2 consecutive days off." In essence, the arbitrator created a remedy for loss of a pass day that she acknowledged did not exist in the CBA; she "decided, apparently, what the CBA should say and did not rely upon what it does say." *On-Duty and Off-Duty Pay for Events*, 111 A.3d at 801. *Such an addition to the CBA is a function of an interest arbitration* and exceeded the arbitrator's powers in this grievance arbitration. *Id.* at 801-02.

*City of Pittsburgh v. FOP*, 189 A.3d at 496-97 (emphasis added; citations partially omitted). *See generally Michael G. Lutz Lodge No. 5, FOP v. City of Phila.*, 634 Pa. 326, 335-36, 129 A.3d 1221, 1226-27 (2015) (elaborating on the distinction between grievance and interest arbitration). The court also observed that the FOP, during the collective bargaining process, had unsuccessfully sought to make a pertinent change in the CBA.[6]

The FOP's appeal was allowed to consider the following issue, as framed by the bargaining unit:

> Did the Commonwealth Court ignore this Supreme Court's existing mandate to defer to a grievance arbitrator's straightforward interpretation of contract language by mislabeling her award the construction of an equitable result, thereby weakening the general assembly's intent for Act 111 awards to create a final and binding resolution of contract disputes?

---

[6] Specifically, the Commonwealth Court pointed to the following proposed amendatory language:

> *Pass Day Cancellations (Section 8):* Amend Section 8(D) to provide an 8-hour work guarantee and require compensation at the double-time rate on all occasions where an employee is required to work on a pass day.

*City of Pittsburgh v. FOP*, 189 A.3d at 493 (citations omitted).

*City of Pittsburgh v. FOP, Fort Pitt Lodge No. 1*, \_\_\_ Pa. \_\_\_, 200 A.3d 937 (2019) (*per curiam*).

The parties agree that the narrow certiorari framework serves as the governing scope of review. Under that framework, as noted, courts only consider the jurisdiction and authority of the arbitrator, the regularity of the proceedings, and whether any constitutional rights have been violated. *See, e.g.*, *Borough of Ellwood City v. Ellwood City Police Dep't Wage & Policy Unit*, 573 Pa. 353, 359-60, 825 A.2d 617, 621 (2003). Consistent with the parties' arguments, authority -- and jurisdiction to some extent -- are presently at the forefront.

In terms of the applicable standard of review, the FOP initially contends that it is plenary. *See* Brief for Appellant at 3. Nevertheless, the bargaining unit's substantive arguments are more consistent with the City's acknowledgement that -- where resolution of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow certiorari depends upon an interpretation of a collective bargaining agreement or fact-finding -- the review is highly deferential, and the reviewing court is bound by the arbitrator's determination, even if incorrect. *Compare id.* at 22 (crediting the standard of review set forth in *PSP v. PSTA (Styers)*, 840 A.2d 1059, 1062-63 (Pa. Cmwlth. 2004), encompassing an "extreme standard of deference"), *with* Brief for Appellee at 1-2 (same, with citation to this Court's decision in *Town of McCandless*, 587 Pa. at 540, 901 A.2d at 1000-01).

On the merits, the FOP discusses the special role of Act 111, which was designed to balance the interests of the Commonwealth in promoting public safety and the labor rights of critical public-service personnel. *See generally Town of McCandless*, 587 Pa. at 535-36, 901 A.2d at 997-98 (quoting *PSP v. PSTA (Smith & Johnson)*, 559 Pa. 586, 591-92, 741 A.2d at 1251-52 (1999)). The union emphasizes that, as part of

this equilibrium, police and fire personnel were denied the right to strike, but their employment interests were nonetheless protected via mandatory collective bargaining and access to arbitration. *Accord id.*

The FOP further explains that narrow certiorari review of Act 111 arbitration awards, on the one hand, vindicates the manifest public interest in the timely, certain, and final resolution of labor disputes in the police and firefighter arenas. *See, e.g., Twp. of Sugarloaf v. Bowling,* 563 Pa. 237, 241, 759 A.2d 913, 915 (2000) ("To ensure that resolution of labor disputes [between police and firefighters and their public employers is] both swift and certain, involvement by the judiciary in the resolution of Act 111 disputes is most severely circumscribed."). On the other hand, the judiciary was bound to screen against the possibility that arbitrators might stray outside the purview of legitimate dispute resolution. *See City of Phila. v. FOP,* 564 Pa. at 299, 768 A.2d at 296 (expressing a concern with avoiding "investing Act 111 arbitrators with limitless powers.").

In all events, the FOP emphasizes, "[u]nder narrow certiorari, the appellate court's role is to be one of restraint and extreme deference to the arbitrator's decision," and courts are to refrain from engaging in merits review of arbitration proceedings. Brief for Appellant at 16, 22. In this regard, the FOP relates that errors of law committed by an Act 111 arbitrator fall outside narrow certiorari's appropriate purview. *See, e.g.*, Brief for Appellant at 23 ("[T]he fact that an arbitrator either erroneously interpreted or misapplied language in a CBA in resolving an individual grievance is not a valid basis for vacating an Act 111 arbitration award.").

According to the union, the Commonwealth Court "consciously overreached" and exhibited "deliberate indifference" to the narrow certiorari construct by deeming an asserted error of law fatal to the arbitrator's resolution of a dispute entrusted to her

under the CBA. *Id.* at 17. Along these lines, the FOP charges that the intermediate court exceeded the established scope of review by displacing the arbitrator's interpretation of the CBA and mislabeling the remedy she awarded as an equitable one. *See id.* at 37. As a matter of policy, the union argues:

> The Commonwealth Court's opinion, if permitted to stand, creates an immediate vehicle for destabilization of the collective bargaining rights of police officers and firefighters, which is harmful to the general public, as it undermines the goals of Act 111 in ensuring an actual resolution of disputes between police employees and their municipal employers.

*Id.* at 38.

The City, on the other hand, contends that, once the arbitrator rejected the FOP's position that the municipality had breached the CBA by requiring officers to engage in secondary employment, she should have simply denied the grievance.[7] Consistent with the Commonwealth Court's decision, the City argues that the arbitrator improperly acted as an interest arbitrator by fashioning compensation in excess of what the CBA provided, thus exceeding her powers under Act 111. *See, e.g.*, Brief for Appellee at 9, 17 ("Only an interest arbitration panel is empowered with the necessary delegation of authority to modify mandatory subjects of bargaining.").

---

[7] Despite portraying the matter of secondary employment as presently irrelevant, the City offers an extra-record explanation for why it believes that Section 24 of the CBA (Secondary Employment) lacked effectiveness at the time of the marathon. *See* Brief for Appellee at 5 n.1. The explanation concerns a memorandum of understanding between the City and the FOP entered in 2013. *See id.*

As the City recognizes, however, the effectiveness of such memorandum is a contested matter in ongoing litigation presently before the Commonwealth Court, *see FOP, Fort Pitt Lodge No. 1*, 1414 CD 2019, and there is simply no need for this Court to delve into the matter here.

In the City's view,

> This case demonstrates why the limits of a grievance arbitrator's authority cannot precisely mirror that of an interest arbitrator's without eroding the parties' right to engage in collective bargaining. Otherwise, a grievance arbitrator, finding no ambiguous term to interpret, nor any other contract violation to remedy, can take a frolic through the parties' agreement, reconstruct it to suit her sense of fairness, and remain immune from judicial review.

*Id.* at 9. In this regard, the City offers a series of rather effective criticisms of the arbitrator's reasoning. *See id.* at 19 (relating that, in "find[ing] that officers were entitled to a different guaranteed rate of pay when subject to a schedule modification," the arbitrator "ignored other provisions in the contract that already compensate officers for work outside their normal shifts").

Consistent with its pervading focus on the terms of the CBA, the City contends that it could not, consistent with the bargaining agreement, voluntarily vary the terms and conditions of officers' employment. *See id.* at 21-22. From the City's point of view, this demonstrates that the arbitrator exceeded her authority, given that she was permitted to require the City to do only that which it could do voluntarily. *See, e.g.*, *City of Pittsburgh v. FOP, Fort Pitt Lodge No. 1*, 595 Pa. 47, 54, 938 A.2d 225, 230 (2007); *Betancourt*, 540 Pa. at 79, 656 A.2d at 90. It is the City's position that, contrary to the FOP's prognosis of destabilization, the Commonwealth Court's order preserves the well-settled distinction between binding interest arbitration and grievance arbitration. *See* Brief for Appellee at 25 ("There is nothing to suggest that prohibiting grievance arbitrators from acting as interest arbitrators will have a deleterious effect on labor peace.").

Finally, the City invokes Article III, Section 31 of the Pennsylvania Constitution. *See* PA. CONST., art. III §31 (providing -- notwithstanding the general prohibition against

delegation of certain powers related to municipal functions -- that the General Assembly may enact laws, *inter alia*, providing for binding arbitration implemented by "panels or commission, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers"). To the extent that the procedural safeguards of Act 111 pertaining to interest arbitration are not scrupulously observed, the City contends that modification of a collective bargaining agreement is constitutionally impermissible. *See* Brief for Appellee at 20-21.

Applying narrow certiorari review centering on jurisdiction and authority, we initially conclude that the arbitrator had jurisdiction over the present controversy. The jurisdictional assessment, in this context, concerns subject matter jurisdiction. *See, e.g.*, *City of Arnold v. Wage Policy Comm. of the City of Arnold Police Dep't*, 643 Pa. 28, 36-37, 171 A.3d 744, 749 (2017) (citing *City of Phila. v. IAFF, Local 22*, 606 Pa. 447, 462, 999 A.2d 555, 564 (2010) ("The inquiry that the jurisdiction prong of narrow certiorari has traditionally posed is a single and straightforward question—did the decision-maker in the adjudicatory process act in that general class of controversies that the law empowers it to consider.")). Under this Court's decisional law, "an arbitrator has jurisdiction to adjudicate the class of disputes arising out of a CBA between a public employer and its firefighters or police employees, rationally related to the terms and conditions of their employment." *Id.* at 37-38, 171 A.3d at 750.

Indeed, although the City has understood the Commonwealth Court's opinion as encompassing a holding that the arbitrator lacked jurisdiction over the present labor dispute, *see* Brief for Appellee at 8, the municipality does not presently defend the decision on such terms. *See, e.g.*, Brief for Appellee at 21 (acknowledging that, as a jurisdictional matter, "public employers are bound to proceed to arbitration even when a

contract interpretation grievance is meritless or does not concern a legitimate dispute between the parties" (citing *Pittsburgh Joint Collective Bargaining Comm. v. City of Pittsburgh*, 481 Pa. 66, 70-71, 391 A.2d 1318, 1320 (1978)). For this reason, the City concentrates on the matter of authority. *See, e.g.*, *id.*[8]

In terms of the arbitrator's authority, this Court's recent decisions recognize the broad authority of an arbitrator to address terms and conditions of employment. *See, e.g.*, *Smith & Johnson,* 559 Pa. at 592, 741 A.2d at 1252 (observing that the "definition of what constitutes 'an excess of an arbitrator's powers' [is] far from expansive."). As long as an award concerns terms and conditions of employment, and the arbitrator does not require the performance an illegal act -- or one that a party could not do voluntarily -- the authority prong of narrow certiorari review is generally met. *See, e.g.*, *City of Pittsburgh v. FOP*, 595 Pa. at 54, 938 A.2d at 230; *City of Phila. v. FOP*, 564 Pa. at 299-301, 768 A.2d at 296–97.[9] Along these lines, the City itself concedes (at least in one

---

[8] The Commonwealth Court's explicit holding was based on an excess-of-powers rationale, but its reasoning was largely premised on *On-Duty and Off-Duty Pay for Events*, 111 A.3d at 801-02, which blended the jurisdictional and excess-of-authority aspects of narrow certiorari review. *See id.*

The notion that jurisdiction, in the grievance arbitration setting, should be assessed according to the specific terms of the collective bargaining agreement under consideration finds some support in minority expressions of individual Justices. *See, e.g.*, *City of Arnold*, 643 Pa. at 51-52, 171 A.3d at 757-58 (Saylor, C.J., concurring). Such positions, however, have not garnered the support of a majority of this Court. *See, e.g.*, *id.* at 37-38, 171 A.3d at 750 (reflecting the majority's application of a subject-matter litmus extraneous to the terms of the bargaining agreement in issue).

[9] It is also necessary for the complaining party to identify, before the arbitrator, the particular issues in dispute. *See City of Phila. v. IAFF,* 606 Pa. at 464, 999 A.2d at 565. Here, although the City offers a colorable complaint that the focus before the arbitrator on the secondary employment issue was predominant, the FOP did specifically invoke Sections 8 (Hours of Work) and Section 9 (Overtime) of the CBA, *see* Pittsburgh (continued…)

passage from its brief) that, "[w]here resolution [of a labor dispute] depends upon interpretation of a collective bargaining agreement or undisputed facts, the Court is bound by the arbitrator's determination, even if incorrect." Brief for Appellee at 1-2 (citing *Town of McCandless*, 587 Pa. at 532, 901 A.2d at 995).

The Commonwealth Court recognized that the disputed award concerns terms and conditions of employment, *see City of Pittsburgh v. FOP*, 189 A.3d at 496, and certainly the City does not dispute this. Accordingly, the City premises the relevant line of its argument on illegality -- or the assertion that it cannot be required to do what it could not do voluntarily -- based on terms and conditions specified in the CBA. *See, e.g.*, Brief for Appellee at 21-22.

If, however, the requirement of voluntariness turned on the specific matters to which the parties can be said to have agreed in a bargaining agreement, narrow certiorari, excess-of-authority review would simply collapse into the essence test applicable to labor arbitrations *outside* the Act 111 context. *See Millcreek Twp. Sch. Dist. v. Millcreek Twp. Educ. Support Personnel Ass'n*, ___ Pa. ___, ___, 210 A.3d 993, 996 (2019) (explaining that, under the essence test, grievance arbitrators may decide only issues encompassed by a collective bargaining agreement, and their awards must be upheld if the arbitrator's interpretation can rationally be derived from the agreement). But this Court has maintained that the assessment of terms and conditions is within the domain of arbitrators. For example, in *City of Philadelphia v. Fraternal Order of Police,* the Court specifically rejected an argument that an arbitrator misinterpreted the management rights clause of a collective bargaining agreement. The Court reasoned: "Such an argument . . . is not cognizable within the confines of the narrow certiorari

_____

(…continued)
Marathon Overtime Pay Grievance at 1, which served as the ostensible basis for the award.

scope of review's definition of an excess of the arbitrator's powers as it is, in effect, an argument that the arbitrator erred as a matter of law." *City of Phila. v. FOP*, 564 Pa. at 300-01, 768 A.2d at 297.

Thus, it is clear from the prior decisions that voluntariness is assessed with regard to matters to which the parties could lawfully agree, for example, according to the legal demarcation between bargainable terms and conditions of employment and managerial prerogatives. *See City of Allentown v. IAFF Local 302*, 638 Pa. 584, 595-96, 157 A.3d 899, 906 (2017) (explaining that subjects that are inherently matters of managerial prerogative are not subject to bargaining, and an arbitrator may exceed his or her powers by intruding upon these).

Notably, over the years, various Justices -- including this author -- have taken a position, similar to that of the City, that the essence test should apply to grievance arbitrations conducted in the Act 111 framework and/or that grievance awards involving police and fire-fighting personnel should be subject to judicial review for manifest unreasonableness. *See, e.g.*, *Town of McCandless*, 587 Pa. at 534 n.10, 901 A.2d at 996 n.10 (collecting minority expressions in this vein). *See generally* John P. McLaughlin & Patrick J. Harvey, *Betancourt and the Narrow Certiorari Scope of Review of Appeals from Act 111 Grievance Arbitration Awards: Its Time Has Already Come and Gone*, 5 U. PA. J. LAB. & EMP. L. 427, 437 (2003) (contending that the failure of narrow certiorari review, in the grievance arbitration setting, to focus on the terms of the collective bargaining agreement "cheapens the value of collective bargaining under Act 111, and threatens to deteriorate the process to an empty formality"). These expressions, however, have failed to command majority support. Moreover, the Legislature has had decades to consider the substantial and important questions being raised by members of this Court about the severe constraints on judicial review of Act

111 grievance arbitration awards, but the Assembly has not undertaken to alter the prevailing law restricting such review to narrow certiorari. *See generally PPL Elec. Utils. Corp. v. City of Lancaster*, ___ Pa. ___, ___, 214 A.3d 639, 647–48 (2019) (explaining that, "when the legislature declines to amend a statute in contravention of this Court's prior interpretation of the statute, we may presume that our prior interpretation was and remains consistent with legislative intent." (citations omitted)).

As the FOP stresses, the prevailing majority position, in this regard, is predicated on the substantial labor rights withheld from police and firefighting personnel on account of their critical role in promoting the health and safety of the public. *See, e.g., City of Allentown*, 638 Pa. at 594-95, 157 A.3d at 905-06. And Act 111 does specifically provide that an arbitration award "shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved" and that "[n]o appeal therefrom shall be allowed to any court." 43 P.S. §217.7(a).

Certainly, an Act 111 grievance arbitrator should not undertake to equitably reform a collective bargaining agreement. Absent an indisputably overt instance of reformation, however, we find the task of distinguishing between such an innovation and errors of law in the interpretation to be unmanageable. *Cf. Smith & Johnson*, 559 Pa. at 593-94, 741 A.2d at 1252-53 (refusing to incorporate review for violations of public policy into narrow certiorari, since such a focus "--- however that nebulous concept may be defined by a particular appellate court -- would greatly expand the scope of review . . . undercut[ting] the legislature's intent of preventing protracted litigation in this arena"). Presently, we agree with the FOP that the arbitrator's legal reasoning, however flawed, demonstrates sufficient interpretative focus.[10]

---

[10] In this regard, we appreciate the City's observation that the CBA provides that "[t]he Arbitrator shall not have the right to add to, subtract from, modify, or disregard any of the terms or provisions of the Agreement." CBA 5.C.3.b. Again, however, under (continued…)

Finally, with respect to the City's constitutional argument, this has been raised for the first time in a responsive brief before this Court, and the FOP has not submitted a reply. Absent such counter-advocacy, this case does not present an ideal vehicle to delve into the application of Article III, Section 31 of the Pennsylvania Constitution. Moreover, the City has not developed a record of the actual fiscal impact of the arbitrator's decision. In this regard, the courts have not been informed as to how many hours of officers' work at the marathon fell between the undisputed four-hour minimum and the eight hours due under the arbitration award. In the circumstances, while we certainly do not foreclose the possibility of an as-applied challenge to an Act 111 grievance arbitration award under Article III, Section 31, as a prudential matter we decline to proceed beyond the parameters of the case presented to the statutory appeals and intermediate courts and the reasoning they applied.

The order of the Commonwealth Court is reversed, and the matter is remanded for reinstatement of the arbitration award.

Justices Baer, Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

---

(…continued)
prevailing law, an arbitrator's legal errors in the interpretation of the labor agreement fall outside the scope of appropriate judicial review in the Act 111 context.